This is a suit to cancel a lease on certain business property affected by the written lease contract and to have defendant ordered to vacate the premises. It was tried on a rule to show cause why plaintiff's demands should not be allowed, issued by the Ninth Judicial District Court of this State.
Plaintiff's suit is based entirely on Articles 2710 and 2711 of the Revised Civil Code, which are as follows:
"The lessee is bound:
"1. To enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease.
"2. To pay the rent at the terms agreed upon."
"If the lessee makes another use of the thing than that for which it was intended, and if any loss is thereby sustained by the lessor, the latter may obtain the dissolution of the lease.
"The lessee, in that case, shall be bound to pay the rent, until the thing is again leased out; and the lessee is also liable for all the losses which the owner may have sustained through his misconduct."
He alleged that defendant was making a use of the leased premises other than that for which it was leased, in that she operated a dance hall, with a loud music box, known as a nickelodeon. That she changed a porch to the residence part of the building into a beer parlor for negroes; and that she kept open after 11 o'clock P.M. That it was the intention of the parties that the property be used as a dwelling, grocery store and filling station only and that defendant, in operating the business as not intended by the lease, has caused plaintiff great damage and injured the rental value of his property. *Page 505 
The lease contract is as follows:
"Parish of Rapides,
"State of Louisiana.
"Be it known that on this the 12th day of August, A.D. 1939, before me, Clarence R. Henderson, a Notary Public in and for the Parish of Rapides, State of Louisiana, duly commissioned and qualified, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared James M. Bruce, a married man, whose wife before marriage was Miss Della Muse, born Muse, now living with him a resident of Rapides Parish, Louisiana, as party of the first part, and Mrs. Ollie Bolton Cobb, born Bolton, married to J.C. Cobb, a resident of Rapides Parish, Louisiana, as party of the second part:
"Party of the first part agrees to accept from party of the second part as rent on the following described property:
"One six-room dwelling, with store and filing station in front, together with filling station equipment consisting of air compressor, hot patch machine, etc., store fixtures, consisting of an electric cold drink box, scales, meat slicer, paper cutter, etc., located on Highway 165 about one mile north of Glenmora, at Spring Creek, known as Shady Nook.
"1. A rental of $70.00 per month, payable as follows:
"One cent per gallon on all gasoline purchased from Standard Oil Company each month, at a minimum of $25.00 per month, payable to said Standard Oil Company. This is to be deducted from the said $70.00 payable to the said James M. Bruce each month.
"2. Party of the first part guarantees party of the second part peaceable possession of the above described property insofar as his ownership is concerned for a period of two years after this date at the above mentioned rental, providing proper rental is paid on or before the 12th day of each succeeding month. The first installment being due and payable on the 12th day of September, 1939, and one installment being due and payable on the 12th day of each succeeding month during the period of this lease.
"3. Party of the first part agrees to furnish water to party of the second part to said dwelling, store and filling station, free of charge.
"4. Party of the first part hereby agrees to furnish electric current to the party of the second part for all operating use on these said premises at a rate agreed upon by both of said parties.
"5. Party of the second part hereby agrees not to sub-lease the said property to any other party whatsoever.
"6. Party of the second part hereby agrees to pay for all minor repairs on the above described property and return same to party of the first part at the expiration of this lease as in the present condition, wear and tear excepted.
"Thus done and passed at my office in Glenmora, Rapides Parish, Louisiana, by said appearers, who sign these presents with me said Notary, and in the presence of the undersigned, competent witnesses on this the 12th day of August, A.D., 1939
"James M. Bruce
"Mrs. Ollie Bolton Cobb
"Clarence R. Henderson,
"Notary Public."
Plaintiff owns and operates a summer resort known as "Shady Nook". He operates a dining hall, a dance hall equipped with a nickelodeon and a drinking apartment where he sells soft drinks and beer. He also operates a swimming pool, which is located on the same premises. He has six cottages for rent on the grounds, and it is a fairly popular resort in the summer time for those living in that section of the State. Located on the same premises is the property he leased to defendant. Defendant's place of business is located on the highway and plaintiff's place of business is some distance back of it down on the creek, near the swimming pool.
The record makes it clear that defendant is getting the greater portion of the dancing and drinking business which has hurt plaintiff's business in that respect greatly. This, no doubt, is the reason for the present suit.
The written contract fails to define the area of the property intended to be covered. We think this was supplemented by the agreement between plaintiff and defendant after the latter had moved in, when they agreed where the fence around the leased property was to be placed. Plaintiff furnished part of the material for the fence and defendant had it erected.
Immediately after defendant took charge of the premises, she learned that the negro beer customers had been previously served over the same counter as the white customers by plaintiff, who formerly conducted the business in the leased premises. Defendant was unwilling to conduct her business *Page 506 
in that manner and proceeded to screen a part of the porch to the residence portion of the building, which was connected to and a part of the same building as the store. After screening it, defendant hung heavy cloth over the screens, thereby enclosing it. She then placed a long table and some chairs in this enclosure and used it exclusively for the negro beer customers. In this manner the negroes were segregated from the white people. During the time she was building this enclosure, plaintiff came on the scene and thoroughly approved of it. He made some suggestions and requested defendant to have her carpenters remove some decayed parts of the floor and replace it at his, plaintiff's, cost. This was done and paid for by plaintiff.
The building was used to sell beer to negroes by plaintiff before defendant took the place over under her lease. The only change made thereafter was to segregate the negroes from the white customers and was done with the complete approval of plaintiff. He is without legal right to complain now.
Some months after defendant took charge she erected next to the store building and within the enclosure a small platform with a shed over it. She then placed a nickelodeon in one corner and the visitors to this resort used it as a dance pavilion. Plaintiff now complains that the lease never intended that the dance hall should be operated on the premises and in erecting and using the pavilion for that purpose, defendant has breached the lease contract.
During the time the pavilion was being erected, plaintiff was present a number of times and knew why it was being built. He offered suggestions as to the height the floor should be from the ground and caused the removal of one of the blocks supporting the pavilion because it was resting on top of a cesspool. He not only made no complaint but apparently approved of defendant's idea. The first complaint raised by plaintiff was some time after it had been used for dancing and that was when plaintiff requested defendant to close the dance hall at 11:00 P.M., which she refused to do. He complained of the loudness of the nickelodeon, however, in his place of business he had a similar one which could be heard for at least half a mile.
Plaintiff testified that his entire complaint before filing this suit was that defendant kept open after 11:00 P.M., and that if she had agreed to close promptly at eleven o'clock, he would not have filed this suit. There is no restriction in the lease as to the closing time and no law requiring eleven o'clock closing, therefore, plaintiff is without legal right to demand that of defendant. It was certainly no breach of the contract of lease not to close at 11:00 P.M.
Plaintiff might have had a cause of action had he not consented to or at least acquiesced in defendant erecting the dancing pavilion and operating it.
The complaints as to the manner in which it or the other part of defendant's business was operated are not established. To the contrary, many witnesses, ladies, men and the peace officer of that Ward, all testified that the entire business was conducted in a most orderly manner; that the greater part of the dancers who patronized defendant's place consisted of high school children generally chaperoned by their mothers. There was no drunkenness by either whites or blacks; no drinks sold in the dance pavilion and no drinking allowed on the floor. At 11:00 P.M., defendant cut down the volume of the nickelodeon and many times the dancers complained that it was not loud enough and departed.
When plaintiff operated the place now run by the defendant, he did not have a dance hall, but did have a slot machine in his store for his customers to gamble on. He was indicted and plead guilty and paid a fine for operating it.
Plaintiff's complaint that the manner in which defendant operated her business caused his resort to lose business is without merit, when we consider the testimony relative to the manner in which plaintiff operates his dance hall and beer saloon. There has never been any sort of disturbance at defendant's place of business but this cannot be said of plaintiff's place.
We are convinced there is no merit in plaintiff's claim and that the reason for the filing of this suit is that defendant's place of business attracted many customers who otherwise would have visited the dance hall and beer pavilion operated by plaintiff.
The lower court rejected plaintiff's demands. The judgment is correct and is affirmed, with costs.
TALIAFERRO and HAMITER, JJ., concur. *Page 507